UNITED STATES DISTRICT COURT
NORTHERN DISTRICT INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO.: 1:11-CV-193-TLS ) |
| LIGHTS & SIGNALS, INC., ROSALIE K. WALDROP and DONALD E. WALDROP, | ) ) ) ) |
| Defendants. | ) |

**OPINION & ORDER**

The Plaintiff, American Contractors Indemnity Company (ACIC), has sued the Defendants, Lights & Signals, Inc. (L&S), Rosalie K. Waldrop, and Donald E. Waldrop, to enforce an indemnity agreement between the parties. The Plaintiff alleges that it issued payment bonds to L&S for multiple construction-related projects in Indiana, two of which are the subject of this lawsuit. When L&S failed to pay various subcontractors involved in these projects, the subcontractors submitted bond claims with the Plaintiff. The Plaintiff maintains that it is entitled to indemnification in the amount of $136,477.02 for the losses it incurred settling those bond claims, plus attorney's fees, costs, and expenses incurred in settling the claims and pursuing its indemnification rights. On December 28, 2011, the Plaintiff filed a Motion for Summary Judgment [ECF No. 26], Memorandum of Law in Support [ECF No. 27], and Appendix in Support [ECF No. 28]. On January 30, 2012, the Defendants filed their Response in Opposition to Motion for Summary Judgment [ECF No. 30], Memorandum of Law in Opposition to Summary Judgment [ECF No. 31], Affidavit of Donald Waldrop [ECF No. 32], and Appendix in Support of Defendants' Response [ECF No. 33]. On February 16, the Plaintiff filed its Reply in

Support of Motion for Summary Judgment [ECF No. 35], and Supplemental Appendix [ECF No. 36].

**STATEMENT OF FACTS**

In 2007, L&S was in the business of installing, repairing, and maintaining traffic signals, roadway and parking lot lighting, and other related construction. The Plaintiff provided payment bonds (the Bonds or Payment Bonds) to L&S for construction projects. As a condition of receiving these Bonds, on August 21, 2007, Rosalie Waldrop and Donald Waldrop, the owners of L&S, executed a General Indemnity Agreement (the Indemnity Agreement). Rosalie signed the Agreement personally and as President of L&S, and Donald signed it personally. The Indemnity Agreement provided the Plaintiff with indemnity rights as follows: "[The Indemnitors] agree to indemnify and hold [ACIC] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature together with interest thereon . . . which arise by reason of, or in consequences of, the execution by [ACIC] of [the Bonds]." (Indemnity Agreement ¶ 2, ECF No. 28 at 21.) The duty to indemnify extended to: sums paid or liabilities incurred in the settlement or adjustment of claims, demands, damages, costs, losses, suits, proceedings, or judgments (*id.* ¶ 2.1); expenses paid or incurred in connection with claims, suits, or judgment under the Bonds (*id.* ¶ 2.2); expenses paid in enforcing the terms of the Indemnity Agreement (*id.* ¶ 2.3); expenses incurred in recovering or attempting to recover losses or expenses paid or incurred (*id.* ¶ 2.5); and attorneys' fees and all legal expenses related to any item in the Indemnity Agreement (*id.* ¶ 2.6).

On December 2, 2010, L&S contracted with the City of Fort Wayne Board of Public Works (the Fort Wayne Project). L&S was the prime contractor on the Fort Wayne Project, performing work directly for the City of Fort Wayne. The Plaintiff issued a Payment Bond to L&S for the Fort Wayne project. (Fisher Aff. ¶ 5; Payment Bond, ECF No. 28 at 14.)

On February 1, 2011, L&S contracted with Johnson Controls, Inc., for the Marion, Indiana, Incandescent Traffic Signals Project (the Marion Project). Johnson Controls was the prime contractor and L&S was a subcontractor. On February 14, the Plaintiff issued a Payment Bond to L&S for the Marion Project. (Fisher Aff. ¶ 4; Payment Bond, ECF No. 28 at 7.)

In Spring 2011, the Plaintiff received claims on the Payment Bonds it issued for the Fort Wayne Project and Marion Project from various subcontractors and suppliers. On April 25, 2011, the Plaintiff received a claim from Doron Distribution in the amount of $65,877.74. The Plaintiff requested that L&S advise it if there were any defenses to Doron's claim. In response, L&S advised the Plaintiff that materials and labor valued at $12,719.00 had not actually been provided by Doron or had not been accepted by the owner on the Marion Project. On or about May 20, 2011, the Plaintiff paid Doron $52,570.00 for its Bond claim.

On May 9, 2011, the Plaintiff received a claim from Consolidated Electrical Distributors (CED) for $85,531.19. According to the Plaintiff's Bond Claims Attorney, Jill Fisher, on May 11, the Plaintiff requested, by fax, that L&S advise it if there were any defenses to CED's claim. Fisher also left a voicemail for Donald Waldrop requesting that he contact her regarding CED's claim. On May 16, 2011, Donald returned Fisher's telephone call and stated that the "amount owed to [CED] is closer to $54,000 as far as [he] knows" and that he would check the accounting records and follow up with Fisher with more specific detail later that week. On May 26, 2011,

Donald called Fisher to confirm that the amount claimed by CED was accurate. On August 26, the Plaintiff paid CED $83,840.28 for its Bond claim.

On May 12, the Plaintiff received a claim from Fiberglass Fabrication for $43,900. The Plaintiff, according to Fisher, requested that L&S advise it if there were any defenses to Fiberglass Fabrication's claim. The Plaintiff did not receive any communication from L&S regarding the claim amount and, on or about July 6, issued payment to Fiberglass Fabrications for the full amount of its Bond claim.[1]

The Plaintiff has paid $180,310.28 in Bond payments. Johnson Controls paid the Plaintiff $9,582.00 as the amount outstanding on the Marion Project that it otherwise owed to L&S. The Plaintiff also received the outstanding contractual balance of $9,251.26 that was otherwise owed to L&S for the Fort Wayne Project. L&S provided the Plaintiff with $25,000 cash collateral. With these payments, the Plaintiff's total loss under the Bonds, excluding attorneys' fees and costs, is $136,477.02. Fisher's Affidavit states that the Plaintiff has incurred $16,068.62 in

---

[1] The Defendants submit the Affidavit of Donald Waldrop in response to the Plaintiff's Motion for Summary Judgment. In his Affidavit, Donald states that when L&S ceased doing business in spring 2011, it was forced to vacate its corporate offices and its business records "were put in substantial disarray and it has become almost impossible to find or verify most questions concerning the last days of [L&S]." (Waldrop Aff. ¶ 11, ECF No. 32.) Donald asserts that to his "best recollection and belief," he "did scrutinize and respond to all of the inquires made of me—leaving none unanswered." (*Id.* ¶ 13.) Donald recounts receiving the Plaintiff's inquiry concerning Doron and Fiberglass Fabrications, but maintains to his "best recollection and belief" that he did not receive any other requests. (*Id.* ¶ 14.)

These statements from Donald's Affidavit are not included in the Defendants' Statement of Material Facts in Dispute or elsewhere in their Memorandum of Law in Opposition to Summary Judgment. Thus, it is not clear what impact the Defendants anticipated that his statements would have with respect to CED's Bond claim, for which Fisher provided unequivocal testimony concerning her communication with Donald. Even if Donald's best recollection and belief in the context of business documents that were, in his own words, in "substantial disarray" creates an issue of fact, such a dispute would not be material to the outcome of the Plaintiff's Motion for Summary Judgment. The terms of the Indemnity Agreement do not require that the Plaintiff put the Defendants on notice of the subcontractors' Bond claims before settling such claims.

attorneys' fees and $1,845.82 in costs and expenses. Her Affidavit does not provide any supporting documentation with respect to the attorneys' fees or costs.

On June 6, 2011, the Plaintiff filed its Complaint against the Defendants, alleging that the Defendants had refused to indemnify the Plaintiff in accordance with the Indemnity Agreement. After filing the Complaint, on June 16, the Plaintiff was notified of a claim by the Indiana Combined Laborers Fund, but it has not paid that claim because the Fund has not provided any supporting claim documentation. In addition, the Plaintiff has requested additional time to amend the Complaint so that it can consider a potential claim against Professional Federal Credit Union, upon which it has served non-party discovery directed at the merits of its potential claim.

## ANALYSIS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in its favor; if the nonmovant is unable to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted.

In an indemnity agreement, one party promises to reimburse another party for its loss, damage, or liability, thereby shifting the financial obligation to pay damages from the indemnitee to the indemnitor. *Mead Johnson & Co. v. Kenco Grp., Inc.*, 899 N.E.2d 1, 3 (Ind. Ct. App. 2009); *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 756 (Ind. Ct. App. 2002); *Ozinga*

*Transp. Sys., Inc. v. Mich. Ash Sales, Inc.*, 676 N.E.2d 379, 386 (Ind. Ct. App. 1997). If the words of the indemnity clause are clear and unambiguous, they must be given their plain and ordinary meaning and enforced; indemnity agreements are construed "to cover all losses and damages to which it reasonably appears the parties intended it to apply." *Mead Johnson*, 899 N.E.2d at 3 (quoting *Zebrowski & Assocs., Inc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind. Ct. App. 1983)).

It is undisputed that Defendants L&S, Rosalie Waldrop, and Donald Waldrop entered into the Indemnity Agreement with ACIC. In doing so, they agreed to indemnify the Plaintiff for all losses which arose by reason of, or in consequences of, its execution of the Bonds, including sums paid in settlement of claims or demands. The Indemnity Agreement provides:

> In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred or expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of [ACIC] or the vouchers or other evidence of disbursement by [ACIC] shall be prima facie evidence of the fact and extent of the liability hereunder of the [Defendants].

(Indemnity Agreement ¶ 3.4.) Fisher's Affidavit provides prima facie evidence that the Plaintiff incurred net losses of $136,477.02 in settling Bond claims from Doron, CED, and Fiberglass Fabrication. The only argument the Defendants provide in response to this prima facie evidence is to question whether the Plaintiff properly settled the Bond claims. They assert that, to receive payment in bonded public works projects, a claimant must be in the protected class of claimants and must follow certain protocols to notice and perfect their claims in accordance with Indiana Code Title 8 or Title 37. The Defendants' objection to the Plaintiffs' Motion for Summary Judgment is that there is no information from which the Defendants or the Court can determine that the Plaintiff properly validated the subcontractors' claims in accordance with the applicable

state statutes. The Defendants request that the Court deny summary judgment "at least until the facts surrounding" whether the subcontractors' claims were timely and properly made in accordance with statute is "properly vetted and determined." (Defs.' Mem. of Law 9, ECF No. 31.)

The flaw in the Defendants' argument is that the Indemnity Agreement does not require that the Plaintiff insist that a Bond claimant follow certain statutory protocols before the Plaintiff pays its claim. In fact, the Indemnity Agreement gives the Plaintiff "the right in its sole and absolute discretion to determine whether any claims under any Bond or Bonds shall be paid, compromised, adjusted, defended, prosecuted or appealed." (Indemnity Agreement ¶ 3.1.) This unambiguous provision, which gives the Plaintiff "sole and absolute discretion to determine" whether to pay Bond claims, forecloses the Defendants' only objection to the entry of summary judgment. Through the Indemnity Agreement, the Defendants granted the Plaintiff the right to do exactly what it did—to determine whether to pay, compromise, adjust, defend, prosecute, or appeal the Bond claims—and further agreed to indemnify the Plaintiff for the resulting losses. A court construes an indemnity agreement "to cover all losses and damages to which it reasonably appears the parties intended it to apply," *Mead Johnson*, 899 N.E.2d at 3 (quoting *Zebrowski*, 457 N.E.2d at 261), and the net losses of $136,477.02 reasonably fall within the parties' intended coverage.

The Plaintiff also seeks recovery of its attorney's fees and other legal expenses. In Indiana, "[a]n indemnitee is entitled to recover attorney's fees expended defending the underlying claim and prosecuting the claim for indemnification." *Tack's Steel Corp. v. ARC Constr. Co.*, 821 N.E.2d 883, 890 (Ind. Ct. App. 2005) (quoting *Bethlehem Steel Corp. v. Sercon*

*Corp.*, 654 N.E.2d 1163, 1168 (Ind. Ct. App. 1995)); *see also Putz v. Allie*, 785 N.E.2d 577, 582 (Ind. Ct. App. 2003) (stating that an Indiana contract that allows for the recovery of reasonable attorney's fees will be enforced according to its terms unless it violates public policy) (citing *Harrison v. Thomas*, 761 N.E.2d 816, 821 (Ind. 2002)). The Indemnity Agreement specifically contemplates that the Defendants will indemnify the Plaintiff for attorney's fees and legal expenses (Indemnity Agreement ¶¶ 2 & 2.6), and the Court thus finds that the Plaintiff is entitled to recover these fees and expenses. However, because the Plaintiff has not provided an "itemized statement of . . . expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of [ACIC] or the vouchers or other evidence of disbursement by [ACIC]" (*Id.* ¶ 3.4) with respect to such fees and expenses, it has not set forth prima facie evidence of its attorney's fees and legal expenses. Fisher's conclusory statement of the amount the Plaintiff has incurred in attorney's fees and costs and expenses is not sufficient to enter judgment as a matter of law in favor of the Plaintiff for the specific amount of those fees and expenses.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Plaintiff's Motion for Summary Judgment [ECF No. 26]. The matters of the Plaintiff's attorney's fees and costs, losses related to the Bond claim submitted by the Indiana Combined Laborers Fund, and any potential claim against current non-party Professional Federal Credit Union (*see* ECF No. 29) remain pending.

SO ORDERED on February 24, 2012.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT